UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD M. ORNITZ, EDWARD A. SUNDBERG and
NEWPORT PROJECT DEVELOPMENT COMPANY,

      Plaintiffs,      Civil Action No. 18-cv-11047

 -against-          **COMPLAINT**

MATTHEW R. KENNEDY and JOHN CARVER, **JURY TRIAL DEMANDED**

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    Plaintiff Richard M. Ornitz, Edward A. Sundberg and Newport Project Development Company ("NPDC"), by its undersigned attorneys, for their Complaint against Defendants Matthew R. Kennedy and John Carver, allege:

### SUMMARY

    1. This is an action for breach of contract, breach of fiduciary duty, declaratory relief and an equitable accounting. Plaintiff Ornitz organized Plaintiff NPDC in 2015 as a subsidiary of his company InfraLinx Capital LLC ("InfraLinx") to assist the City of Newport, Rhode Island in developing and structuring public private partnerships for the purpose of designing, financing, constructing, renovating, modernizing, operating, and rehabilitating public projects in the City of Newport. In 2016, Kennedy and Carver became members of InfraLinx and involved in developing those projects for the City of Newport through NPDC. In 2017, Ornitz, Kennedy and Carver agreed that Kennedy and Carver would have the opportunity for a six-month to one-year period to exclusively control NPDC and pursue NPDC's business objectives, subject to certain continuing financial and other obligations to Ornitz. The temporary control of NPDC by Kennedy and Carver was to become permanent if they were able to close a significant project for the City of Newport, failing which control would revert to Orntiz exclusively. As set forth more

fully herein, Kennedy and Carver never closed a significant project for the City of Newport during their period of exclusivity and, as a consequence, exclusive control of NPDC vested in Ornitz.  During the time Kennedy and Carver controlled NPDC, they breached their obligations under their agreement with Ornitz (including their obligation to reimburse significant expenses to each of Plaintiffs Ornitz and Sundberg), disparaged Ornitz to the City of Newport and others, and failed to pursue projects with the City of Newport for the benefit of NPDC in breach of their fiduciary duties.  Ornitz is entitled to a declaratory judgment that he exclusively controls the operation of NPDC as between Ornitz, Kennedy and Carver and Ornitz is also entitled to an equitable accounting from Kennedy and Carver.  Ornitz, Sundberg and NPDC are entitled to compensatory damages against Kennedy and Carver.

## **JURISDICTION AND VENUE**

2. The claims asserted herein arise under and pursuant to common law.

3. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  The citizenship of each of Plaintiffs Ornitz, Sundberg and NPDC are diverse from that of each of Defendants Kennedy and Carver. The matter in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the relevant agreements were negotiated and executed in this judicial district and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.  During relevant time periods, InfraLinx maintained its offices at each of 230 Park Avenue, New York, New York and 1221 Avenue of the Americas, New York, New York where Kennedy and Carver regularly attended work and client meetings and had use of office space.

## PARTIES

5. Plaintiff Ornitz is a citizen of the State of Connecticut.

6. Plaintiff Sundberg is a citizen of the State of Rhode Island.

7. Plaintiff NPDC is a limited liability company organized and existing under the laws of the State of Delaware. The members of NPDC are InfraLinx, whose sole member is Ornitz, and G2 Investment Group, LLC, whose members are, upon information and belief, citizens of the State of New York.

8. Defendant Kennedy is a citizen of the State of Massachusetts.

9. Defendant Carver is a citizen of the State of California.

## ALLEGATIONS

10. Plaintiff Ornitz is a recognized market leader in infrastructure in the United States and globally in emerging markets and focuses his business as an investor developer on international, privatization, private equity and cross-border finance matters. He is Chairman of both NPDC and InfraLinx, the majority member of NPDC. He also Chairman of separate infrastructure advisory businesses in Europe and the Middle East under the "InfraLinx" group of companies with which Defendants had and have no involvement. Among other business, Ornitz had advised the European Bank for Reconstruction and Development and the European Investment Bank and serves on the advisory board of the United Nations Public Private Partnership Advisory Board for the United Nations for Europe in Geneva, Switzerland. He previously served as Chairman of the U.S. Infrastructure Private Advisory Group and on the Private Advisory Board of the U.S. Secretary of State as well as four years as Vice Chairman of the Structured Finance GmbH of Creditanstalt Bank in Austria and twelve years as a member of senior management of Degussa Corporation, part of a Fortune Global 100 company. He has closed in excess of $100 billion of infrastructure deals around the world. As a lawyer, Mr.

Ornitz was ranked repeatedly by Chambers USA as a leading project finance lawyer and EuroMoney as a leader in project finance and privatization. He has taught special classes on infrastructure at Cornell, MIT Sloan and University of Alberta.

11. Ornitz formed InfraLinx in 2014 and, prior to Defendants' involvement, InfraLinx was awarded a prestigious mandate to assist the US Army Corps of Engineers to structure public private partnerships to address the Corps of Engineers' backlog of $60 billion in needed infrastructure projects for the country's waterways, rivers, ports and hydroelectric dams. In 2015, again without Defendants' involvement, Ornitz was introduced to Paul Carroll, the investment director of the City of Newport, by Ornitz's longstanding client, Gilbane Corporation, a prominent construction company in the City of Newport. Based on that introduction and InfraLinx's prominent work for the US Army Corps of Engineers, Ornitz was asked to assist the City of Newport in conceiving and deploying a structure for developing infrastructure projects that would, among other things, make the City of Newport more resilient to rising sea levels from climate change, as well as a structure to provide the related financial advisory services that were necessary to fund such projects.

12. The structure Ornitz recommended was a "Pre-Development Agreement" ("PDA") between the City of Newport and an infrastructure advisory provider. The PDA is an infrastructure development and financing structure created by Ornitz for the U.S. infrastructure market. Based on Ornitz's advice and with his assistance, the City of Newport put out a Request for Proposal ("RFP") for candidates wishing to bid on the role of infrastructure advisor under a Pre-Development Agreement to be negotiated with the City of Newport. The City of Newport received over twenty responses to the RFP, including from many prominent institutions such as KPMG, but ultimately chose InfraLinx as its advisor and development partner under a Pre-

Development Agreement dated January 20, 2016 (the "PDA").  The PDA identifies seven projects with a focus on a positive financial return for the City of Newport and four projects with a focus on social returns.

13. Defendants Kennedy and Carver had no involvement with the foregoing generation of business with the City of Newport.  Kennedy is a son of Joseph Kennedy II, the prominent Massachusetts politician and businessman, and a grandson of the late Robert F. Kennedy.  Kennedy was introduced to Ornitz to assist Kennedy in developing an expertise in infrastructure.

14. By agreement dated January 1, 2016, Defendants Kennedy and Carver joined InfraLinx as members.  Carver was a Vice President of Ports America, the largest United States marine ports operator.  Ornitz was and remains Chairman of InfraLinx.

15. InfraLinx formed NPDC on December 11, 2015 to specifically pursue the projects with the City of Newport.  By agreement dated August 16, 2016, G2 Investment Group LLC, a private investment company, joined NPDC as a member.  NPDC is owned 75% by InfraLinx and 25% by G2 Investment Group, LLC.

16. Notwithstanding Ornitz's position as (a) Chairman of both InfraLinx and NPDC, (b) the originator and chief negotiator of the relationship with the City of Newport, and (c) the only member of InfraLinx with the experience and capability to complete successful infrastructure and P3 projects, Kennedy and Carver from the outset aggressively and personally courted City of Newport administrators and tried to marginalize Ornitz's involvement.  While Ornitz was content to allow Kennedy and Carver to take the lead with the projects with the City of Newport as the individual project managers responsible for closing transactions, he later learned that Kennedy had falsely disparaged Ornitz's abilities to City of Newport administrators.

5

17. In 2017, the disagreements between Ornitz, on the one hand, and Kennedy and Carver, on the other hand, became an impediment to NPDC's pursuit of the projects with the City of Newport. In addition, Kennedy and Carver were not interested in investing in InfraLinx's pursuit of business outside of the City of Newport. As a consequence, Ornitz, Kennedy and Carver negotiated a Spin-Off Agreement dated August 8, 2017, as amended (the "Spin-Off Agreement") that was designed to spin off the NPDC business that was focused solely on the City of Newport so that NPDC's business could be pursued exclusively and permanently by either (a) the Kennedy-Carver team under a company they formed called Converge Partners ("Converge") or (b) Ornitz exclusively through InfraLinx.

18. The parties' respective right to have "permanent control" was determined as follows: The Spin-Off Agreement gave Kennedy and Carver, through Converge, the right to control NPDC from the date of the Agreement, *i.e.*, August 7, 2017, for a period of six months, *i.e.*, until February 7, 2018. During the period of Kennedy's and Carver's control, Ornitz retained the right to received designated profits and the right of first refusal to obtain financing for any project. If "meaningful progress" was made by Kennedy and Carver in the initial six-month period towards closing a transaction with the City of Newport, Kennedy and Carver were entitled to an additional six months, *i.e.*, until August 7, 2018, to complete a "successful closing of a significant project." The Spin-Off Agreement defined "meaningful progress," in pertinent part, as the "city granting additional 'Approval to proceed' as determined under the executed [Pre-Development Agreement with the City of Newport dated January 20, 2016] …for a significant project" or otherwise written affirmation by the City of Newport that meaningful progress had been made towards a significant project. The Spin-Off Agreement further provided that Kennedy and Carver, through Converge:

6

>shall gain Permanent Control of NPDC upon the successful *closing* of a significant project.  A significant project shall be defined as any project with an investment greater than $10 million, or for projects of less than $10 million, therewith the City otherwise deems as "significant."

(Emphasis supplied.)

19. Kennedy and Carver were unable to make any meaningful progress towards actually closing a significant project by February 7, 2018, and had failed to close any project at all, significant or insignificant, by August 7, 2018.  Indeed, Ornitz never received any distributions, reports of progress or any notification that a project would need financing.

20. The Spin-Off Agreement provides that "[s]hould Mr. Kennedy and Mr. Carver not make meaningful progress as defined above within 6 months from signing this Agreement, nor close a deal within (12) months, as defined above, …then Mr. Ornitz has the right to assume 100% total control of NPDC in perpetuity from [Converge].  Mr. Ornitz must notify [Converge] of his intention within 14 days of his willingness to take control."  Ornitz so notified Kennedy of his intention to take control of NPDC by letter dated October 5, 2018, thereby making his control effective October 19, 2018.  Kennedy thereafter disputed Ornitz's position that Ornitz was entitled to exclusively control NPDC.

21. The Spin-Off Agreement further provides:

>Under this Agreement it is possible that either party may ultimately gain 'permanent control' of NPDC.  At the time of achievement of permanent control, the ownership of the NPDC shall transfer (by operation of law) to the party achieving that control as envisioned in the Agreement….  At the time of this transfer of permanent control, Matthew Kennedy and John Carver shall have not further shareholder interest in [InfraLinx].

As a consequence of the foregoing, Kennedy and Carver have no ownership interest in either NPDC or InfraLinx.

7

## COUNT I

(Declaratory Judgment)

22.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 21 as if fully set forth herein.

23.     Pursuant to 28 U.S.C. § 2201(a), the Court "may declare the rights and other legal relations of any interested party seeking such a declaration[.]"  Pursuant to the Spin-Off Agreement, Ornitz attained permanent control of NPDC and Kennedy and Carver lost their interest in InfraLinx, the majority shareholder of NPDC.  Defendants have disputed Ornitz's position.  As a consequence, Ornitz is entitle to a judgment declaring that (a) he has permanent control of NPDC as between Ornitz, Kennedy and Carver (subject to G2 Investment Group LLC's rights as a member of NPDC) and (b) Kennedy and Carver have no further interest in InfraLinx.

## **COUNT II**

(Breach of Contract – Kennedy's Disparagement of Ornitz)

24.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 23 as if fully set forth herein.

25.     Notwithstanding Ornitz's permanent control of NPDC, his pursuit of NPDC's business with the City of Newport will be impaired by Kennedy's prior disparagement of Ornitz to City of Newport administrators — which Kennedy admitted to Ornitz and others — following the execution of the Spin-Off Agreement.  Kennedy's disparagement of Ornitz was a breach the express mutual non-disparagement terms in the Spin-Off Agreement which provides:

> Each Party agrees for itself and all others acting on its behalf, either directly or indirectly, not to take, support, encourage, induce or voluntarily participate in any action or attempted action that would negatively comment on, disparage, or call into question the legitimate business conduct of Infralinx, NPDC, Sundberg,

Ornitz, Carver or Kennedy or to act in any way with respect to such legitimate business conduct that would damage the reputation, business relationships, or present or future business of Infralinx, NPDC, Sundberg, Ornitz, Carver or Kennedy, except as required or permitted by law or as necessary for each Party to defend itself in any civil, criminal, administrative, judicial, arbitral, or administrative proceeding.

26. Ornitz and NPDC are entitled to compensatory damages for all economic injury to Ornitz and/or NPDC caused by Kennedy's disparagement of Ornitz to the City of Newport.

## COUNT III

(Breach of Fiduciary Duty – Corporate Waste)

27. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 26 as if fully set forth herein.

28. When Kennedy and Carver took temporary control of NPDC, NPDC was well-placed to pursue several projects endorsed by the City of Newport. Kennedy and Carver had a fiduciary duty to pursue those opportunities as the sole managers of NPDC. Indeed, Kennedy and Carver themselves valued the opportunities that NPDC potentially represented as $141 million in a spreadsheet prepared by Carver and presented to G2 Investment Group LLC. Yet Kennedy and Carver utterly failed to pursue those projects in complete derogation of their fiduciary duty of care owed to NPDC.

29. As but one egregious example of Defendants' waste of NPDC's business opportunities, NPDC was to be granted the land development rights for 34 acres on Newport's waterfront as a consequence of NPDC's and InfraLinx's work on the Pell Bridge realignment project under Ornitz's leadership before temporary control of NPDC was ceded to Kennedy and Carver. Indeed, at an event announcing the Pell Bridge realignment, the Governor of Rhode Island specifically cited the assistance of Ornitz and InfraLinx in precipitating the state's funding of the project that was critical to traffic decongestion in the City of Newport. Those land

9

development rights were confirmed in writing by the City of Newport and were extremely valuable, yet Kennedy and Carver failed to perfect and pursue those rights, which rights may have lapsed or, at the very least, been rendered more difficult to monetize.

30. Another egregious example of Defendants' waste of NPDC's business opportunities was their failure to pursue extremely valuable opportunities with the Navy Underwater Warfare Command in Newport ("NUWIC"). Before ceding temporary control of NPDC to Kennedy and Carver, Ornitz negotiated and signed on behalf of NPDC a Project Implementation Agreement with NUWIC which gave NPDC the right to commercialize Navy technology and bring to NUWIC third party commercial technology for potential licensing and use by the Navy. Ornitz recruited Plaintiff Sundberg, a Navy Captain, nuclear engineer, and former Navy submariner, to manage and develop the opportunity with NUWIC. NPDC also formed Newport Technology Company to undertake the projects with NUWIC. Once Defendants were given temporary control of NPDC, Kennedy demanded that Sundberg cease and desist all work with NUWIC and Kennedy took full control of the Newport Technology Company. Upon information and belief, Defendants thereafter failed to close projects with NUWIC, thereby egregiously wasting NPDC's valuable asset.

31. As a consequence of Kennedy's and Carver's breach of their fiduciary duties, NPDC has been damaged in an amount to be determined at trial.

## COUNT IV

(Breach of Contract – Failure to Reimburse Expenses)

32. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 31 as if fully set forth herein.

33.     The Spin-Off Agreement specifically required Kennedy and Carver to immediately pay all outstanding expenses of Ornitz and Sundberg that were incurred on behalf of NPDC before July 21, 2017, with the exception of certain expenses incurred by Ornitz in connection with a Bermuda project unrelated to the City of Newport.

34.     Prior to July 21, 2017, Ornitz incurred reimbursable expenses of $51,000 and Sundberg incurred reimbursable expenses of $83,000 on behalf of NPDC.

35.     Kennedy and Carver breached the Spin-Off Agreement by failing to pay Ornitz and Sundberg their reimbursable expenses.

## COUNT V

(Equitable Accounting)

36.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 35 as if fully set forth herein.

37.     Prior to October 19, 2018 when Ornitz obtained exclusive control of NPDC and all ownership interests in InfraLinx, Ornitz, Kennedy and Carver were each managing members of InfraLinx which was the 75% member of NPDC.  As such, Kennedy and Carver owed their co-member, Ornitz, a fiduciary duty with respect to InfraLinx's interest in NPDC.

38.     In addition, Ornitz gave Kennedy and Carver exclusive temporary control over NPDC, which at that time was jointly owned by Ornitz, Kennedy and Carver through their joint ownership of InfraLinx.  As such, Kennedy and Carver owed Ornitz a fiduciary duty with respect to the management of NPDC.

39.     The Spin-Off Agreement does not address the parties' rights to an accounting with respect to the conduct of the affairs of NPDC during the period Kennedy and Carver exclusively controlled NPDC.  In addition, now that exclusive control of NPDC has vested in

11

Ornitz, and Kennedy and Carver no longer manage NPDC, neither Ornitz nor InfraLinx can legally compel Kennedy and Carver to provide an accounting of their management of NPDC and any business NPDC conducted during the period of Kennedy's and Carver's exclusive control. As a consequence of the foregoing, Ornitz has no legal remedy for an accounting from Kennedy and Carver.

40.     In the absence of remedy at law for an accounting, Ornitz is entitled to an equitable accounting from the fiduciaries, Kennedy and Carver, to whom Ornitz gave exclusive temporary control of NPDC.

41.     Ornitz is entitled to a judgment directing Kennedy and Carver to provide a complete accounting of their management of NPDC and their conduct of the business of NPDC and its projects for the period August 7, 2017 to October 19, 2018, as well as any period thereafter during which Kennedy and Carver exercised control over the affairs of NPDC in derogation of Ornitz's right to exclusively control NPDC as of October 19, 2018.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

i. Declaring that (a) Ornitz exclusively controls NPDC as of October 19, 2018, (b) Kennedy and Carver are not entitled to exercise any control or rights with respect to NPDC, and (c) Kennedy and Carver have no ownership interest in InfraLinx;

ii. Awarding Ornitz and NPDC compensatory damages against Kennedy in an amount to be determined at trial for Kennedy's breach of the non-disparagement provisions of the Spin-Off Agreement;

iii. Awarding NPDC compensatory damages against Kennedy and Carver in an amount to be determined at trial for Kennedy's and Carver's breach of their fiduciary duties of care in wasting NPDC's economic rights and business opportunities;

iv. Awarding Ornitz compensatory damages of $51,000 and awarding Sundberg compensatory damages of $83,000 against Kennedy and Carver, jointly and severally, for their failure to reimburse Ornitz's and Sundberg's expenses;

  v.  Directing Kennedy and Carver to produce a full accounting of the business of NPDC for the period August 7, 2017 until they relinquished control of NPDC;

  vi.  Awarding pre-judgment interest; and

  vii.  Awarding such other and further relief that the Court deems just and proper.

Dated: New York, New York    KRAVIT SMITH LLP
   November 27, 2018

             By: /s/Philip M. Smith
               Philip M. Smith

             79 Madison Avenue, 2nd Floor
             New York, New York 10016
             Telephone: (646) 493-8004
             Facsimile: (917) 858-7101
             psmith@kravitsmithllp.com

             *Attorneys for Plaintiffs*